**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Marcia S. Krieger**

Civil Action No. 14-cv-00245-MSK-MJW

**REVEREND MATT HALE,**

     **Plaintiff,**

**v.**

**FEDERAL BUREAU OF PRISONS;
DAVID BERKEBILE, individually;
BLAKE DAVIS, individually;
CHRISTOPHER SYNSVALL, individually;
BENJAMIN BRIESCHKE, individually;
S.M. KUTA, individually;
L. MILUSNIC, individually;
PATRICIA RANGEL, individually;
WENDY HEIM, individually;
S. SMITH, individually;
H. REDDEN, individually;
DIANA KRIST, individually; and
A. TUTTOILMONDO, individually,**

     **Defendants.**

---

**OPINION AND ORDER ADOPTING RECOMMENDATION
AND GRANTING MOTION TO DISMISS**

---

**THIS MATTER** comes before the Court pursuant to a Motion to Dismiss **(#41)** filed by

Defendants, the Federal Bureau of Prisons (BOP) and twelve individual BOP Officials (the

Officials) (collectively, Defendants).  The Plaintiff, Matt Hale, filed a Response **(#49)**.  The

motion was referred to the Magistrate Judge, who issued a Recommendation **(#58)** that the

Motion be granted as to all claims. Mr. Hale, filed timely Objections **(#59)**, the Defendants filed

a Response **(#64)**, and Mr. Hale replied **(#65)**.

1

# I. JURISDICTION

The Amended Complaint (**#10**) (hereinafter, the Complaint) asserts various claims under the First, Fifth, Sixth, and Eighth Amendments to the U.S. Constitution, the Religious Freedom Restoration Act (RFRA), and raises a facial challenge to the constitutionality of a Federal Bureau of Prisons (BOP) regulation found at 28 C.F.R. § 540.15.  Because these claims are brought under the Constitution or laws of the United States, this Court has jurisdiction under 28 U.S.C. § 1331. *See Bell v. Hood*, 327 U.S. 678, 680 (1946).[1]

---

[1] The Recommendation concluded that the Court lacked subject matter jurisdiction to determine Mr. Hale's First Amendment claims for injunctive relief regarding the first and second mail bans (including those brought under the First, Fifth, and Sixth amendments, as well as under RFRA). Specifically, the Recommendation found that because the bans are no longer in place, there is no live case or controversy.

A plaintiff bears the burden to "clearly allege facts demonstrating" jurisdiction; standing cannot be inferred. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 231 (1990). As relevant here, the plaintiff must allege a live case or controversy —that the issues involved are ongoing and the parties have a legally cognizable interest in the outcome. *Chafin v. Chafin*, 133 S.Ct. 1017, 1023 (2013). But even where a challenged action is no longer in place (and therefore a challenge to the action could be considered moot), a court may still decide a case that is "capable of repetition, yet evading review." *See Spencer v. Kemna*, 523 U.S. 1, 17 (1998); *see also Gannett Co. v. DePasquale*, 443 U.S. 368, 377 (1979). For this exception to mootness to apply, a complaint must plead sufficient facts on which a court could conclude that: (1) the duration of the challenged conduct is too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again. *Gannett*, 443 U.S. at 377; *see Pearlman v. Vigil-Giron*, 71 Fed. App'x 11, 13 (10th Cir. 2003). Specifically, the Tenth Circuit has rejected a nearly identical mootness argument to the one presented by Defendants here. *See Al-Owhali*, 687 F.3d at 1242. In *Al-Owhali*, the Circuit found that the government's contention that a prisoner could not challenge a Special Administrative Matter (SAM) because it had since been lifted was misplaced. *Id.* The Circuit noted that "all SAMs expire, at the latest, one year after they are imposed," and if courts "prohibited any challenge to a lapsed SAM, inmates would only have one year to litigate and appeal a case," an almost "impossible feat." *Id.* Therefore, the case was not moot as the challenged action was capable of repetition and too short in duration to be fully litigated prior to its cessation. *Id.* Here, the Complaint pleads that both challenged mail bans were reviewed and lifted after some six months, likely too brief to be resolved by litigation. It also states that Mr. Hale remains in fear that his mail rights again "could be taken away from him at any time, for any arbitrary reason." Specifically, Mr. Hale was told that Defendants "could not guarantee that his mail would not be taken away again if [BOP officers] saw fit."  Repetition is thus particularly possible here because Mr. Hale alleges he was not told what sort of correspondence may trigger

## II.  FACTUAL BACKGROUND

A summary of the factual allegations in the Complaint follows, and the Court will elaborate as necessary in its analysis.[2] All well-pled facts are accepted as true.

Mr. Hale appears *pro se*.[3]  He is an inmate in the custody of the BOP and is incarcerated at the Administrative Maximum facility in Florence, Colorado (ADX). Mr. Hale is a member and practicioner of the Church of the Creator, which advocates the practice of the "Creativity" religious faith. For at least ten years, Mr. Hale was the "Pontifex Maximus," or "greatest priest," and "thousands of Creators" recognize him as an ordained minister. The mission of the Creativity faith is the "permanent prevention of the cultural, genetic, and biological genocide of the White race worldwide."  Creativity doctrine advocates "total racial segregation so as to stop the mixture, and hence destruction, of White culture and genetic stock."

Creativity followers believe that salvation is achieved on earth rather than the afterlife. The "mission of racial salvation" is furthered only in a "legal and peaceful" manner, and Creativity "forbids any and all illegal and violent acts by its adherents in its fight to attain the salvation of the White Race."  Mr. Hale has "no record whatsoever of having committed any

---

another ban. The Court therefore has little doubt that Mr. Hale has plead sufficient facts to warrant review of the mail bans.

[2] The facts are derived from Mr. Hale's Complaint and, in very limited circumstances, the Notices of Restricted General Correspondence Status provided to Mr. Hale, which are central to Mr. Hale's claims deriving from these restrictions. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (when reviewing a motion to dismiss, the Court may consider documents that are "central to the plaintiff's claim," where the documents' authenticity is not disputed); *accord Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002).  The Court declines Defendants' request to take judicial notice of factual findings in prior cases involving Creativity, with the narrow exception of Mr. Hale's habeus corpus case, *Hale v.  United States*, No. 08-cv-94, 2010 WL 2921634 (N.D. Ill., July 22, 2010).

[3] Due to Mr. Hale's *pro se* status, the Court construes his pleadings liberally. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

violent or illegal act" during his incarceration, but followers of Creativity, including Mr. Hale, have resorted to violent means to further their beliefs.[4]

Mr. Hale complains of various administrative restrictions, summarized in turn, which allegedly inhibit his ability to freely exercise his right to practice Creativity.

### A.  Mail Bans

According to the Complaint, it is "not possible for a Creator to exercise his religion by himself. Rather, he must "proselytize it to others," namely, the "non-converted." Mr. Hale's "duties as an ordained minister include the espousal and promotion of Creativity to . . . White people at large," and "counseling to his correspondents." It is "through his mail" that he accomplishes these duties, specifically by writing articles and sermons from prison.

In July 2010, Mr. Hale wrote an article asserting that he was "resuming his leadership as Pontifex Maximus."[5] Afterward, the BOP, namely, Offs. Davis, Milusnic, Krist, Rangel, Synsvoll, Brieschke, and Smith, placed Mr. Hale on Restricted General Correspondence status (more colloquially, a "mail ban").[6] Particularly, Offs. Brieschke and Smith told Mr. Hale that his mail was taken away because he was "trying to direct his church," and Off. Davis told him that "we don't want you to be Pontifex Maximus." Concurrent with this mail ban, Offs. Smith and Redden not only restricted Mr. Hale's outgoing mail, but also "deliberately" "reject[ed] and return[ed] letters that were mailed to [Mr.] Hale by his correspondents." Off. Kuta "personally approved and signed off on the rejection and return of each letter that was mailed to [Mr.] Hale

---

[4] Mr. Hale was convicted of one count of solicitation of the murder of a federal judge. *See Hale v. United States*, No. 08-cv-94, 2010 WL 2921634, *1, (N.D. Ill., July 22, 2010).  Motivation for this crime was presumed to be a belief that the Judge presided unfavorably over a civil suit involving the Church of the Creator. *Id.*

[5] The Court is unable to discern to whom Mr. Hale sent this article (or any of his other mailed sermons, for that matter).

by his correspondents." Contrary to BOP policy, Mr. Hale was not given rejection notices. For the incoming letters that were delivered to Mr. Hale, Offs. Smith and Redden covered up the return addresses so that Mr. Hale could not respond.

When the mail ban was imposed, the BOP notified Mr. Hale that it would review the restriction in six months. In the interim, Mr. Hale could respond to the restrictions by attempting "informal resolution under the Bureau's Administrative Remedy Program." The Notice informed Mr. Hale that the ban was imposed because his "correspondence with Creativity Movement members . . . and other white nationalist extremists poses a special threat to the security and good order of the institution, protection of the public and national security insofar as [Mr. Hale's] unlimited general written correspondence might facilitate further criminal activity." The mail ban did not restrict Mr. Hale from corresponding with his immediate family.

In January 2011, after the conclusion of its initial six month imposition, the BOP lifted the mail ban. When Mr. Hale inquired as to what he could write about to avoid having his mail rights taken away again, Off. Redden told him, "the weather." Offs. Brieschke and Redden also directed Mr. Hale to "avoid becoming too involved with his Church."

In July 2012, Mr. Hale began writing "Sermons from Solitary," in which he urged followers to "win over others to Creativity." The Complaint states that these sermons encouraged "peaceful" actions, "urged Creators and others to stay within the law, refrain from any violence, and use persuasion to win over others to Creativity and to the cause of Racial Loyalty generally." The Complaint states that Mr. Hale's writings were thus "helpful to his Church, his religious faith, his fellow believers and those of like mind, as well as to law enforcement and society in general." Still, on January 29, 2013, Mr. Hale was again placed on Restricted General Correspondence status, and the BOP issued him a nearly identical notice informing him of the

particulars of the ban, the reason for its imposition, and how he could contest it. In August 2013, after six months expired, the second mail ban was lifted.

The Complaint alleges that the mail bans were imposed because Mr. Hale was "trying to be something that [he is] not allowed to be anymore," and to "eliminate his First Amendment rights and hurt [Mr.] Hale personally." The mail bans further "sought to punish and persecute [Mr.] Hale for the religious faith that he adheres to," with a desire to "inflict psychological and emotional harm." Particularly the Complaint accuses Offs. Davis, Milusnic, Synsvoll, Brieschke, Krist, Rangel, Smith, and Redden, of having a "personal animosity for [Mr. Hale's] Church." Mr. Hale identifies a statement made by Off. Redden, that the BOP officials "don't like [Mr. Hale] writing for his Church." Mr. Hale states that Off. Rangel informed him that the mail ban was a "management decision made by all of us."

The Complaint contends that Offs. Synsvoll and Brieschke, in their role as attorneys for the BOP, routinely counseled BOP officials to violate prisoners' rights, and the BOP categorically imposed mail bans with "malice and with the deliberate intent that prisoners be deprived of their legal rights . . . with no regard for the Constitution of the United States." It alleges that BOP officials "routinely … claim that the prisoners' correspondence poses a 'threat' regardless of whether this is sincerely believed or not . . . as a means of discouraging prisoners from contesting the mail bans."

### B.  Creativity's Bible

In February of 2013, Offs. Redden, Berkebile, and the BOP refused to allow Mr. Hale to have a copy of "Nature's Eternal Religion," that was mailed to him. Mr. Hale describes the text as the "main Bible of [Mr.] Hale's Creativity religious faith."  The Complaint alleges that this prohibition was due to certain officials' "disdain of the beliefs contained therein" and was an

attempt to "inhibit [Mr. Hale's] ministerial duties."  It alleges that Nature's Eternal Religion does

not pose "any kind of threat or risk of harm to anyone or anything in any way," nor did

Defendants truly believe that it posed a threat. The Complaint alleges that because Mr. Hale is in

solitary confinement, there is no legitimate penological interest, such as institutional order and

security, that justifies denying the book to Mr. Hale.

### C.  Special Diet

In June of 2013, Mr. Hale requested that the BOP provide meals conforming to Mr.

Hale's religious diet, which consists only of raw fruits, vegetables, nuts, or seeds. The Complaint

alleges that the diet is "easy to fulfill in regards to BOP staff and budgetary concerns since no

cooking or processing is necessary or allowed." The BOP, specifically, Off. Berkebile, refused

Mr. Hale's request, which Mr. Hale pleads "substantially burdened [Mr. Hale's] religious

exercise."

### D.  Media Interview

Finally, Mr. Hale challenges the BOP's, specifically Off. Berkebile's, refusal to allow

him an in-person interview with a Fox News reporter. Mr. Hale interviewed with this reporter

before his incarceration to promote his Church and "pro-white activism," and the Complaint

alleges that Mr. Hale sought the interview to "bring public awareness to the fact of his

innocence."  The BOP told Mr. Hale that he could not interview due to "institution safety and

security concerns," but the Complaint alleges that the real reason for denying the interview was

because the BOP and Off. Berkebile do not "want the public to know that there are innocent

men" incarcerated and wish to "silence [Mr.] Hale because of his religious and ideological

beliefs."

### III.  ISSUES PRESENTED

Interpreting the Complaint liberally, the Court understands Mr. Hale to assert the following claims:

1. Violation of his rights of free exercise of religion, speech, and association under the First Amendment when the BOP (1) imposed the first and second mail bans; (2) denied him a copy of Nature's Eternal Religion; (3) failed to accommodate his religious diet; and (4) denied him permission to interview with a Fox News reporter. The Complaint also alleges that the mail bans were retaliatory, that is, they were imposed because Mr. Hale exercised his freedoms of religion;

2. Violation of the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb, *et seq.*, with regard to (1) the mail bans, (2) the refusal to allow him to have Nature's Eternal Religion, and (3) the failure to provide a special diet;

3. Violation of his Fifth Amendment rights when the BOP imposed the mail bans without sufficient procedural due process;

4. Violation of his right to equal protection when he was denied a copy of Nature's Eternal Religion; and

5. Violation of his Eighth Amendment right to be free from cruel and unusual punishment based on his isolation in solitary confinement, coupled with the "imposition of broad mail bans."

Mr. Hale requests monetary and injunctive relief on all claims, as well as a declaratory judgment that 28 C.F.R. 540.15 is facially unconstitutional.

Upon referral, the Magistrate Judge's Report and Recommendation concluded that all claims should be dismissed.[7] Mr. Hale filed timely Objections (**#59**), Defendants filed a Response (**#64**), and Mr. Hale Replied (**#65**).

## IV. STANDARD OF REVIEW

Ordinarily, the Court reviews only the portions of a recommendation to which a specific objection is made *de novo*. Fed. R. Civ. P. 72(b). But in deference to the liberal interpretations afforded to *pro se* pleadings, the Court will consider the Motion to Dismiss *de novo*. *Morales-Fernandez v. INS*, 418 F.3d 1116, 1119-20 (10th Cir. 2005); *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972).

To survive a motion to dismiss, Mr. Hale must plead a sufficient factual basis for each claim. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To be factually sufficient, a claim must be "plausible on its face." *Id.* A claim is plausible on its face if a plaintiff alleged factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on the its judicial experience and common sense. *Id.* at 679.

---

[7] The Recommendation first found that Mr. Hale's request for a declaratory judgment that 28 C.F.R. § 540.15 is facially unconstitutional should be dismissed as a matter of law because other federal courts have rejected this argument and found the regulation constitutional. As to Mr. Hale's claims seeking monetary relief, the Recommendation concluded that: (1) claims brought under RFRA and the First Amendment are barred by *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), and the subsequent line of cases; and (2) the Defendants are entitled to qualified immunity on Mr. Hale's Eighth and Sixth Amendment claims. Last, the Recommendation found that the claims requesting injunctive relief should be dismissed on the grounds that: (1) the Court lacks subject matter jurisdiction over Mr. Hale's claims regarding the mail bans and refusal to permit the Fox News interview because these claims do not seek redress for a live case or controversy; (2) Mr. Hale's claims related to the refusal to allow him to have a copy of Nature's Eternal Religion and provide him with a special diet fail as a matter of law; and (3) Mr. Hale has not adequately plead a sufficient factual basis to sustain his equal protection claims.

The Court limits its review to the four corners of the Complaint plus any documents referenced therein that are central to the claims and for which authenticity is not disputed. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002); *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). All well-pleaded allegations are accepted as true and viewed in the light most favorable to the non-moving party. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). However, threadbare recitations of the elements of a cause of action, supported by mere conclusory statements or "naked assertions" are not entitled to presumptions of truth and need not be considered. *Iqbal*, 556 U.S. at 678. Likewise, allegations so general that they encompass a wide swath of conduct, both permissible and not, may be disregarded. *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012).[8]

## V. ANALYSIS

### A.  Sincerely-Held Religious Beliefs

As an initial matter, Mr. Hale's Complaint raises claims under both the Free Exercise Clause of the First Amendment and RFRA. Both claims require a preliminary finding that the plaintiff has sufficiently pled that the existence of sincerely-held religious beliefs. *See Kay v. Bemis*, 500 F.3d 1214, 1218-19 (10th Cir. 2007) (claims under the Free Exercise Clause require plaintiff to demonstrate sincerely-held religious beliefs); *Kikumura v. Hurley*, 242 F.3d 950, 960 (10th Cir. 2001) (RFRA claim requires the existence of sincerely-held religious beliefs).

Defendants argue that, as a matter of law, Creativity is not a religion. They rely upon opinions issued by other federal district courts addressing the issue. *See, e.g., Todd v. Cal. Dep't of Corrs. & Rehab.*, No. 12-cv-01003, 2013 WL 1281611 (E.D. Cali., Mar. 26, 2013), *rev'd*

---

[8] The Court also notes that ordinarily, it is not sufficient for a plaintiff to state that a claim re-alleges or incorporates by reference all previous paragraphs, as it is not the role of the Court to piece together a plaintiff's arguments for him. *See Al-Owhali*, 687 F.3d at 1244. But because of Mr. Hale's *pro se* status, the Court will examine all of his factual allegations when examining particular claims.

*Todd v. Cali. Dep't of Corr.*, No. 1:12-cv-01003-LJO-DLB, 2015 WL 5042850, *1 (9th Cir., Aug. 27, 2015); *Connor v. Tilton*, No. 07-4965-MMC, 2009 WL 4642392 (N.D. Cali., Dec. 2, 2009) (noting that the fact that Creativity is a white supremacist organization does not necessarily preclude it from also being a religion, but ultimately concluding at summary judgment that Creativity is not a religion); *Birkes v. Mills*, No. 10-cv-00032-HU, 2011 WL 517859 (D. Ore., Sept. 28, 2011) (finding at summary judgment that "Creativity is [not] a religion).

These opinions are not determinative, but they are instructive. As noted, the Court is limited to the four corners of the Complaint in determining whether a cognizable claim has been pled. The question of whether the Complaint has pled that Creativity is a religion is, first and foremost, a question of pleading sufficiency that is unaffected by the decisions by other courts. Whether Creativity is a religion could also be a factual matter, subject to conclusive resolution by application of judicial precedent, under the doctrines of collateral estoppel or doctrine of *res judicata*. But these doctrines have not been invoked by the Defendants.

The proffered case-law is instructive, however, particularly in identifying the point in the judicial process when a determination of whether Creativity is a religion was made. Whether Creativity is a religion is a factual question, and at the motion to dismiss stage, the showing required for a plausible claim is something less than is required for a prima facie claim at summary judgment. *See Al-Owhali v. Holder*, 687 F.3d 1236, 1240 (10th Cir. 2012). Consequently, the *Connor* and *Birkes* courts reserved their determinations to the summary judgment stage – based on a complete factual record.[9] *Todd* is also noteworthy because the Ninth

---

[9] The Court is aware of two opinions dismissing claims on motions to dismiss based on inadequate pleading relative to whether Creativity is a religion. *See Stanko v. Patton*, 568 F.Supp.2d 1061, 1072-73 (D. Neb. 2008); *see also Prentice v. Nev. Dep't of Corrs.*, No. 09-cv-0627, 2010 WL 4181456 (D. Nev. Oct. 19, 2010). These two opinions are also instructive, in

Circuit concluded that the trial court, "prematurely dismissed" the plaintiff's Free Exercise claim on the basis that Creativity was a not religion entitled to constitutional protections on a Fed. R. Civ. P. 12(b)(6) motion. It remanded the case with directions that the trial court more carefully apply the legal standard to examine in detail whether Creativity is a religion. *Todd*, 2015 WL 5042850, *1.

Finding the case-law cited by the Defendants to have only procedural significance, the Court must assess whether the allegations made in this Complaint are sufficient, beginning with the legal standard to be applied. Whether a person's beliefs (religious or not) are sincerely held is a question of fact and does not categorically require a plaintiff to submit direct evidence of sincerity. *See Mosiser v. Maynard*, 937 F.2d 1521, 1526-27 (10th Cir. 1991). Beliefs are insincere only if they are "so bizarre, [and] so clearly nonreligious in motivation." *See Kay*, 500 F.3d at 1219-20. The question is exclusively a credibility determination, thus, summary dismissal on the grounds that a plaintiff's beliefs are not sincerely held is proper only in the "very rare case." *Id*.

There can be little dispute that the Complaint states sufficient facts, which if true, demonstrate that Mr. Hale's beliefs are sincerely held. He converted to Creativity in 1990, has acted as an active minister since 1995, and purports to follow Creativity's requirements, including observing a special diet and proselytizing his faith.

The more difficult question is whether Creativity may be considered a "religion." Only belief systems that may properly be considered religious are entitled to constitutional protections.

---

part because the facts alleged differ from those in the Complaint here.  In *Stanko*, the court considered allegations, including passages from the White Man's Bible, that are not contained in this Complaint.  *Stanko*, 568 F.Supp.2d at 1072.  Moreover, *Stanko* chose to "tread lightly on the question of whether [the plaintiff's] beliefs equate to the practice of religion," and relied more heavily on the fact that prison officials had a valid reason for denying the plaintiff's requests.  *Id.* at 1072-73.  In *Prentice*, the court relied entirely on facts found in the *Connor v. Tilton* opinion rather than conducting an independent analysis of the pleadings. 2010 WL 4181456 at *3.

*See Thomas v. Review Bd. of Indiana Emp't Sec. Div.*, 450 U.S. 707, 713-14 (1981). To determine if a belief system is truly "religious" a court considers whether it (1) addresses fundamental and ultimate questions of deep and imponderable matters, such as human sense of being, purpose in life, or place in the universe; (2) contains "metaphysical" thoughts that "transcend the physical and immediately apparent world;" (3) prescribes a particular manner of acting that is moral or ethical and imposes duties on believers; (4) involves comprehensive beliefs that hope to broadly answer a great deal of humanity's problems rather than focusing on a single teaching; and (5) is accompanied by accoutrements of religion such as holidays, prophets, writings, ceremonies, or diets. *United States v. Meyers*, 95 F.3d 1475, 1483 (10th Cir. 1996). No one factor is dispositive, but "purely personal, political, ideological, or secular beliefs" will not likely suffice. *Id.* at 1503. Religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection. *United States v. Seeger*, 380 U.S. 163, 184-85 (1965). Particularly, that white supremacy is "secular, in the sense that it is a racist idea, does not necessarily preclude it from also being religious." *Wiggins v. Sargent*, 753 F.2d 663, 667 (8th Cir. 1985).

The Complaint identifies certain "commandments" of Creativity that, facially address these sorts of questions. Mr. Hale alleges that "Creativity addresses all the ultimate questions of life, including the meaning of life and its purpose," which, for Creators, is to halt the mixing of races and devote themselves to the salvation and survival of the white race. Creativity "teaches its adherents to build their minds, to eat salubriously, to create a society conducive to their mental and physical well-being, and to preserve a pure and natural environment," and thus imposes duties on its members. Mr. Hale alleges that Creators celebrate certain holidays, perform ceremonies, repeat daily affirmations, follow a prophet, and direct members to proselytize, all of

which are done with the idea that these practices allow a follower to achieve salvation. True, the Complaint does not identify any metaphysical components of Creativity, and it characterizes Creativity as having a single secular goal – the "achievement of white racial immortality." But, however bigoted as Creativity's beliefs may appear, the Complaint states facts which, taken as true, suggest that Creativity addresses the purpose for life and means of salvation, imposes duties on its members, and denotes certain holidays and religious ceremonies to be celebrated or performed.

Constrained to the four corners of the Complaint, the Court finds that there are sufficient factual allegations to support an inference that Creativity is a religion for purposes of Rule 12(b)(6) review. With this finding in mind, the Court turns its attention to the factual sufficiency of Mr. Hale's particular claims.

### B.  First Amendment Claims

The Complaint raises five claims for relief under the First Amendment. Though the Complaint focuses on the First Amendment's protection of religious freedom, it also contends that the Defendants' actions violate free speech and association guarantees. The First Amendment is intended to protect all three rights. *See Christian Legal Soc. Chapter of the Univ. of Cali., Hastings College of Law v. Martinez*, 561 U.S. 661, 673 (2010).

That prisoners retain constitutional rights despite incarceration is supported by a "long line" of Supreme Court cases. *Beerheide v. Suthers*, 286 F.3d 1179, 1184 (10th Cir. 2002). Although "prison walls do not form a barrier separating prison inmates from the protections of the Constitution," inmates' rights may be "restricted in ways that would raise grave First Amendment concerns outside the prison context." *Gee v. Pacheco*, 627 F.3d 1178, 1187 (10th Cir. 2010) (internal quotations omitted). But regulations impinging on these rights must be

reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987). *Turner* recognized that courts are ill-equipped to deal with the "increasingly urgent problems of prison administration and that deference must be afforded to prison officials trained in running penal institutions." *Id.*; *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987).

*Turner* directs a court to engage in a balancing test to evaluate prison regulations that curtail constitutional rights, examining: (1) whether there is a rational connection between the prison policy or regulation and a legitimate government interest advanced as its justification; (2) if there are alternative means of exercising the right available to inmates notwithstanding the regulation; (3) the effect of accommodating the right on prison staff; and (4) if there are easy-to-implement alternatives that could accommodate the inmates' rights. *Id.* at 89-91; *accord Beerheide*, 286 F.3d at 1185.

At the summary judgment stage, a plaintiff must make a showing on all four factors, but at the motion to dismiss stage, a prisoner must simply "plead facts from which a plausible inference can be drawn that the restriction was not reasonably related to a legitimate penological interest." *See Al-Owhali*, 687 F.3d at 1240; *see also Doe v. Heil*, 533 Fed. App'x 831, 838-39 (10th Cir., Aug. 26, 2013).  Thus, in a complaint, a plaintiff need not anticipatorily rebut the defendant's reason for imposing certain restrictions, but need only to plead "some plausible facts support his claim that [the restriction] . . . did not serve the [stated] purpose." *Id.* at 1241.

As noted, inmates retain the right to the free exercise of religion. *O'Lone*, 482 U.S. at 348; *see Peterson v. Lampert*, 499 Fed. App'x 782, 785 (10th Cir. 2012). To plead a constitutional violation based on the Free Exercise Clause in the prison context, a plaintiff must allege that a prison regulation "substantially burdened sincerely-held religious beliefs," and, again, was not rationally related to a penological purpose. *Kay*, 500 F.3d at 1218-19; *Boles v.*

*Neet*, 486 F.3d 1177, 1182 (10th Cir. 2007). A "substantial" burden need not be a complete or

total one. *Yellowbear v. Lampert*, 741 F.3d 48, 55 (10th Cir. 2014). A substantial burden may be

demonstrated by, among other things, facts contending that the regulation or policy required the

plaintiff to participate in activity prohibited by his religion, preventing the plaintiff from

participating in an activity motivated by sincere religious beliefs, or presenting the plaintiff with

a "Hobson's choice," where the only realistic course of action available to the plaintiff results in

a violation of his religion. *Id*.

Like the right to free exercise of religion, the rights of free speech and association may be

limited to meet the needs of a penal institution. *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433

U.S. 119, 125 (1977). To sustain a free speech or association claim, a complaint must allege facts

upon which a court, under *Turner*, could infer that the impinging actions were not in furtherance

of legitimate penological interests. *Jones*, 433 U.S. at 126; *see Brown v. Saline Cnty. Jail*, 303

Fed. App'x 678, 684 (10th Cir. 2008) (a complaint alleging that defendants' actions were

unrelated to a legitimate government interest is sufficient at the dismissal stage).

1. Mail Bans

Mr. Hale alleges that his ability to practice his religion was substantially burdened. The

Complaint alleges that Creativity's "overriding mission . . . is the permanent prevention of the

cultural, genetic, and biological genocide of the White Race worldwide," and to accomplish this,

Creators advocate for "total racial segregation." Thus, by nature, Creativity is a "proselytizing

faith." "Its adherents must bring it to the non-converted in order to follow fully its teachings."

"The Creator must proselytize for his White Race to others so that salvation and immortality may

be attained." Accordingly, the "ability to correspond with others forms a major component" of

Mr. Hale's religious practice. The mail bans prohibited Mr. Hale from corresponding with

anyone outside his immediate family. The Complaint therefore contains sufficient factual allegations to infer that the mail bans substantially burdened Mr. Hale's exercise of religion by preventing him from engaging in an activity central to his religious practice.

The Court's analysis, however, does not end here. The Complaint must also allege facts that plausibly suggest that there is no legitimate penological interest for the mail bans. It states that the proffered reason for the mail bans was that Mr. Hale's correspondence was a threat to institutional and public security. Though the Court ignores the bare legal conclusions asserted in the Complaint, there are some factual allegations refuting the existence of a penological interest. Particularly, Mr. Hale states that his mail never "fomented or encouraged violence in anyway," and has "always been . . . peaceful." In addition, Defendants allegedly censored or rejected Mr. Hale's incoming mail, which does not appear in line with protecting the public (though it is foreseeably related to institutional security and Mr. Hale does not allege with particularity how it is not). Moreover, in contradiction to the BOP's stated reason of security, Mr. Hale was told that the mail bans were imposed because he was "too involved with his Church with his correspondence," "trying to be something that [he] is not allowed to be anymore," and that Defendants "don't like [him] writing for [his] Church."

Taking these factual assertions in the Complaint as true, the Court finds that the Complaint states facts permitting a plausible inference that the mail bans were both a substantial burden to Mr. Hale's religious exercise and were not in furtherance of a penological interest. Accordingly, the Court denies Defendants' Motion to Dismiss Mr. Hale's First Amendment claims related to the mail bans.

2.  Nature's Eternal Religion

Defendants next move for dismissal of Mr. Hale's First Amendment claim challenging the Defendants' refusal to allow him a copy of Nature's Eternal Religion, the Creativity bible.

The Complaint does not allege any facts from which the Court could infer that this denial substantially burdened his ability to exercise Creativity.[10] Thus, any claim that the denial violated the Free Exercise Clause cannot survive a motion to dismiss. However, to the extent that Mr. Hale contends the refusal to allow him Nature's Eternal Religion violates his right to free speech, the Court examines whether there are sufficient facts alleged to support an inference that the restriction does not further a legitimate penological interest. Mr. Hale alleges that he received a copy of Nature's Eternal Religion in the mail, and that the BOP and Offs. Redden and Berkebile refused to allow him to have it. The Complaint continues that the book is not a "threat or risk of harm to anyone or anything," and that Mr. Hale is prohibited from having the book because Defendants "wish to deny [Mr.] Hale his scripture" because of their biases against Creativity and to inhibit Mr. Hale from performing his "ministerial duties."  Although there are no particular allegations as to why the book is not a threat, *e.g.* that it does not contain inflammatory material or that because Mr. Hale is confined to solitary his personal possession of the book cannot be a security concern, the Court finds that at the dismissal stage, the allegations are sufficient.

---

[10] The Complaint, in support of a RFRA claim regarding Defendants' refusal to allow Mr. Hale a copy of Nature's Eternal Religion, states that this refusal "substantially burdened [Mr.] Hale's religious exercise." The Court disregards this statement because it is a bare assertion of the legal standard without any supporting facts. *See Twombly*, 550 U.S. at 555-56.

The Defendants again argue that the existence of prior federal district court opinions upholding a prison's refusal to allow an inmate to possess the book[11] demonstrate that Mr. Hale's claim fails because, as a matter of law, the book is not permitted in the prison context. The Court is not persuaded by Defendants' argument. Defendants do not indicate that the previous cases were decided on nearly identical facts. For example, Defendants do not argue that, in the prior cases the inmates, like Mr. Hale, were in solitary confinement. Moreover, the Court, at this stage, relies only on the Complaint, which alleges facts that could permit a finding that the refusal to allow Mr. Hale a copy of Nature's Eternal Religion was not rationally connected to a legitimate penological interest.

### 3. Special Diet

Defendants move to dismiss Mr. Hale's claim challenging the refusal to accommodate his religious diet. First, the Court examines whether the Complaint alleges a substantial burden on Mr. Hale's religion. Here, it alleges that the requested diet is "integral to the Creativity religion itself" and "there is no such thing as fully following the Creativity religion without following its diet." Though thin, this allegation suffices. *See Holland v. Goord*, 758 F.3d 215, 221 (2d. Cir. 2014) (inmate's assertion that a religious meal was "critical to his observance as a practicing Muslim" sufficiently alleged a substantial burden on religion).

Thus, the Court turns to whether the Complaint alleges that refusing Mr. Hale's diet is unrelated to a legitimate penological interest. The single allegation that there is no such interest is that the Creativity diet is "extremely easy to fulfill in regards to BOP staff and budgetary concerns" as it requires no cooking or preparation but consists only of seeds, nuts, and fresh fruit

---

[11] Two other federal courts concluded that Nature's Eternal Religion is properly banned in the prison context because it encompasses Creativity's tenets, namely, beliefs that the white race is superior and that "Jews, blacks, and what it labels 'mud races'" should be eliminated. *See Byrnes v. Biser*, No. 06-cv-249J, 2007 WL 3120296, *3 (W.D. Penn., Oct. 23, 2007); *see also Birkes v. Mills*, No. 10-cv-0032, 2011 WL 5117859 (D. Ore. Sept. 28, 2011).

and vegetables. But again, for purposes of dismissal the Court finds that, though thin, the Complaint sufficiently pleads that the burden on Mr. Hale's religion could plausibly be unrelated to a legitimate penological interest.

### 4. Fox News Interview

Defendants move to dismiss Mr. Hale's claim that the refusal to allow him to interview in-person with a Fox News reporter violates his First Amendment rights.

The Complaint alleges that Mr. Hale desired the interview to "bring public awareness to the fact of his innocence and wrongful convictions" and that denying the interview was motivated by Defendants' attempt to hide from the public the fact that "innocent men [are] being held [at ADX]" and a desire to "silence [Mr.] Hale because of his religious and ideological beliefs" rather than Defendants' stated "institution safety and security concerns." But, even read liberally, what the Complaint does not allege are any facts from which the Court could infer that there is a live case or controversy or that any refusal to permit the interview with Fox News is capable of repetition. There are no allegations, for example, that Mr. Hale continues to discuss the possibility of an interview with Fox News or any other media outlet. The Court therefore dismisses all claims related to denial of the media interview against Defendants due to a lack of jurisdiction.

### 5. Retaliation

Lastly, Defendants seek dismissal of Mr. Hale's claim that the mail bans were in retaliation for Mr. Hale exercising his First Amendment rights. To be sure, prison officials may not harass an inmate because the inmate exercised his rights. *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010); *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990). Retaliation claims require slightly different elements than other First Amendment claims. A pleading must allege

facts that if true would establish that: (1) the plaintiff engaged in protected activity; (2) the defendant took a responsive action that would "chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the defendant's action was "substantially motivated" by the plaintiff engaging in protected activity. *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007); *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006).

Here, the Complaint alleges that Mr. Hale engaged in constitutionally protected activity by attempting to exercise his religion through correspondence with his followers in a "peaceful" manner. When Mr. Hale corresponded with followers, however, Defendants imposed a ban on his mail. The Complaint alleges that the ban was in response to his exercise of religion and was intended to intimidate Mr. Hale through threats to impose more mail bans and that the bans "deliberately sought to cause [him] psychological anguish" for exercising his First Amendment rights and were motivated by a "disdain" for Creativity. As a result, Mr. Hale "tried to avoid any possibility that he could be accused of 'directing' his Church." Thus, Defendants "succeeded" in preventing Mr. Hale from exercising his constitutional rights.

Assuming, as the Court must, that these allegations are true, there are sufficient facts to show all three elements of a retaliation claim — protected activity and resulting retaliatory acts.

### 6.  Available Relief

For the reasons detailed above, Mr. Hale's First Amendment claims for injunctive relief as to the mail bans, denial of Nature's Eternal Religion, the religious diet, and retaliation may proceed.

The Complaint also seeks monetary relief for these claims. *Bivens* actions permit an individual deprived of constitutional rights by a state actor to bring an action for monetary relief against the actor. *Bivens*, 403 U.S. 388 (1971). But the Supreme Court recognizes the availability

of *Bivens* relief only from select violations and has frequently rejected invitations to expand *Bivens* to other types of claims. *See generally Minneci v. Pollard*, 132 S.Ct. 617 (2012). Particularly, the Supreme Court has declined to extend *Bivens* to certain claims sounding in violation of the First Amendment. *Ashcroft*, 556 U.S. at 675; *accord Bush v. Lucas*, 462 U.S. 367 (1983).[12]

However, there is no hard and fast categorical ban against *Bivens* relief from First Amendment violations by individual defendants, and for purposes of its analysis, the Court assumes without deciding that such relief might be available. Nevertheless, the Court finds that Mr. Hale has not sufficiently alleged facts which, taken as true, allow the Court to infer that relief against the individual defendants is plausible.

To maintain a claim for relief against individual defendants, a complaint must set forth sufficient facts on which the Court can find that each individual defendant was an active participant in the action and, moreover, that the defendant acted with purposeful discrimination. *Iqbal*, 556 U.S. at 676-77; *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *see Bell v. Wolfish*, 41 U.S. 520, 535 (1979). Purposeful discrimination requires more than intent, rather, a plaintiff must allege that the defendant undertook a course of action because of the adverse effects such action would have against a particular class. *Iqbal*, 556 U.S. at 676-77. A complaint must explain "what each defendant did to him or her; when the defendant did it; how the defendant's actions harmed him or her; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 494 F.3d 1158, 1163 (10th Cir.

---

[12] Because the Court dismisses any claims for monetary relief arising out of alleged First Amendment violations, the Court dismisses the First Amendment claims against the individual Officials, as injunctive relief is available only against the BOP. Accordingly, the Court need not address the Officials' qualified immunity defense. *See Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 at n.5 (1998) (noting qualified immunity is not available to block relief in the form of a determination of law or to enjoin future conduct).

2007). It is not, for example, sufficient for a plaintiff to contend that a defendant was a "principal architect" of or "instrumental" in an invidious policy or action. *Iqbal*, 556 U.S. at 680-81. Put simply, without more, allegations that an individual defendant played a primary role in a discriminatory policy are not sufficiently detailed. *Id.*

Viewing the pleading liberally, the Court contrives that Mr. Hale purports to seek relief against Offs. Davis, Milusnic, Krist, Rangel, Synsvoll, Brieschke, Smith, Kuta, Tutoilmundo, Redden, and Heim. The Complaint alleges generally that these individuals imposed the mail bans and that each "participated individually and personally in the decision" and they took his mail away because of "personal animosity for his Church."[13] These statements are bare and conclusory and do not sufficiently allege personal participation or discriminatory motive.

The Complaint more specifically alleges that Offs. Milusnic, Redden, and Kuta "personally approved and signed off on the rejection and return of letters that were mailed to [Mr.] Hale," while Offs. Smith and Redden "personally arranged for the rejection and return of his letters." It continues that Offs. Brieschke and Redden directed him not to refrain from involvement in his church if he wanted to avoid another ban because "[they] don't like [him] writing for [his] Church." The Complaint accuses Offs. Smith and Redden likewise "deliberately" failed to give Mr. Hale rejection notices or covered up return addresses, and that Off. Davis "urged" others to impose the mail ban.[14] Lastly, it alleges that Off. Berkebile refused

---

[13] He also identifies what each Official's job was — warden, assistant warden, supervisory attorney, assistant supervisory attorney, unit manager, SIS technician, special investigative agent, and assistant inmate systems manager — but without explaining the majority of their roles in the bans.

[14] Mr. Hale's contention that Off. Davis should be liable because he encouraged imposition of the mail bans, is also legally insufficient, as indirect participation cannot satisfy *Bivens*' personal participation requirement. *See Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658, 691 (1978); *see also Adams v. Wiley*, 398 Fed. App'x 372, 375 (10th Cir. 2010).

Mr. Hale's dietary request. Notably absent are any factual allegations to suggest that the refusal was intentional or motivated by a discriminatory purpose.[15]

Therefore, the Court finds that they are insufficient to allow the Court to plausibly infer that the individual defendants acted with the requisite discriminatory motive. Mr. Hale's claims for individual monetary relief under the First Amendment are dismissed.

### C. Religious Freedom Restoration Act

The Complaint alleges that the mail bans, the refusal to allow him a copy of Nature's Eternal Religion, and the failure to provide a special diet all violate RFRA in addition to the First Amendment. Defendants move for dismissal on all claims.

To state a RFRA claim, a plaintiff must allege that the challenged action imposed a substantial burden on a sincere exercise of religion. 42 U.S.C. § 2000bb-1(a); *Kaemmerling v. Lappin*, 553 F.3d 669, 676-77 (D.C. Cir. 2008); *cf. Kikumura*, 242 F.3d at 960.

1. Nature's Eternal Religion

As the Court previously noted, the Complaint does not allege sufficient facts from which the Court could conclude that the refusal to provide Mr. Hale with a copy of Nature's Eternal Religion substantially burdened his ability to practice his religion. Mr. Hale's RFRA claim as to Nature's Eternal Religion is therefore dismissed as to all Defendants.

2. Mail Bans and Special Diet

The Complaint does, however, allege sufficient facts demonstrating that the mail bans and the refusal to accommodate Mr. Hale's special diet substantially burdened his ability to exercise sincere religious beliefs for the same reasons discussed in the Court's First Amendment

---

[15] To the extent the Complaints seeks to rely on general allegations that the Defendants' actions were all committed out of disdain for Mr. Hale's religion, this is not sufficiently detailed to state a claim for individual liability.

analysis. Accordingly, the Complaint has sufficiently pled RFRA violations based on the mail bans and refusal to provide a religious diet.

### 3. Available Relief

The Complaint again requests both monetary and injunctive relief for the RFRA violations. Without further analysis, the two surviving claims (related to the mail bans and refusal to provide the Creativity diet) may proceed on the request for injunctive relief.

As for monetary relief, a party asserting a claim for money damages against a state actor must point to a specific waiver of governmental immunity. *Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). Mr. Hale has not identified an express waiver of sovereign immunity for RFRA claims. Regardless, RFRA does not permit monetary relief against federal and state actors. *See Sossamon v. Texas*, 563 U.S.  277, 131 S.Ct. 1651, 1660 at n.6 (2011); *see Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 841 (9th Cir. 2012); *Webman v. Fed. Bureau of Prisons*, 441 F.3d 1022 (D.C. Cir. 2006); *Said v. Teller Cnty.*, No. 14-cv-02745-RPM, 2015 WL 1598098, *3 (D. Colo., April 9, 2015). Thus, the claim for monetary relief under RFRA against the BOP is dismissed as a matter of law.

Remaining is whether the individual Officials may be liable for monetary damages arising out of Mr. Hale's two remaining RFRA claims. For the same reasons stated by the Court in its First Amendment analysis, the Court finds that the Complaint does not allege sufficient facts plausibly demonstrating that there was deliberate and personal participation in either the mail bans or refusal to provide the religious diet. Mr. Hale's claims for monetary relief against individual Defendants under RFRA are therefore dismissed.

### D. Fifth Amendment Claim

Defendants move to dismiss Mr. Hale's Fifth Amendment claim that imposing the mail bans without prior notice and an opportunity to be heard violated his due process rights.

To state a Fifth Amendment claim for violation of procedural due process a plaintiff must allege (1) deprivation of a protected liberty interest and (2) that the procedures followed to deprive an individual of that interest were constitutionally insufficient. *Elliot v. Martinez*, 675 F.3d 1241, 1244 (10th Cir. 2012). As relevant here, incarcerated persons retain only a narrow range of protected liberty interests. *Sandin v. Connor*, 515 U.S. 472, 480 (1992). To state the existence of a protected liberty interest an inmate must therefore allege that the challenged action "impose[d] atypical and significant hardship" on the inmate, beyond what is akin to the "ordinary incidents of prison life." *See Wilkinson v. Austin*, 545 U.S. 209, 223 (2005). Particularly, a number of courts have concluded that communication restrictions similar to that challenged by Mr. Hale do not rise to the level of a protected liberty interest. *See, e.g., Kennedy v. Blackenship*, 100 F.3d 640, 642 (8th Cir. 1996) (no liberty interest in sanction that included restrictions on mail, telephone, and visitation privileges); *Villareal v. Harrison*, 1999 WL 1063830, *2 (10th Cir., Nov. 23, 1999) (two-year confinement with restricted telephone privileges and requiring inmate to eat alone did not give rise to a protected liberty interest); *Chappell v. McKune*, 1999 WL 1079618 (10th Cir., Nov. 23, 1999) (1000 day confinement to administrative segregation does not give rise to a protected liberty interest).

The Complaint alleges that the restrictions on Mr. Hale's use of the mail ("general correspondence status") without a hearing or prior notice amounted to a due process violation. Without more specification, this allegation is bare and conclusory and fails to state sufficient facts. More pertinent, Mr. Hale has not alleged any facts from which the Court could plausibly infer that the mail ban was more severe than the ordinary restrictions of incarceration.

The Court's analysis is unchanged by Mr. Hale's allegation that BOP policy required notice and an opportunity to respond before placing an inmate on restricted correspondence. To be sure, 28 C.F.R. 540.15(c) states that before placing an inmate on Restricted General Correspondence a warden shall advise the inmate in writing of the reasons the inmate is placed on restricted correspondence and give the inmate the opportunity to respond orally or in writing. But here, as evidenced by the Notice to Mr. Hale, this procedure was complied with. In any event, violation of an internal policy or procedure does not necessarily amount to a constitutional violation. *See Cole v. Bone*, 993 F.2d 1328, 1334 (8th Cir. 1993). Accordingly, the Fifth Amendment claim for violation of procedural due process is dismissed.

**E. Equal Protection Claim**

Defendants next move to dismiss Mr. Hale's claim that he was deprived of his right to equal protection as a result of the Defendants' refusal to allow him a copy of Nature's Eternal Religion.

To plead claim for violation of equal protection, a complaint must set forth facts from which a court can plausibly infer that a government entity treated the plaintiff differently than other "similarly situated" individuals. *Cleburne v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439 (1985); *Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011). The complaint must first and foremost identify the existence of similarly-situated individuals, not of the protected class, that were treated differently. *See Barney v. Pulsipher*, 143 F.3d 1299, 1312 (10th Cir. 1998). For example, in the prison context, a plaintiff might identify prisoners serving similar sentences, in similar conditions, who were treated differently. *Id.* But, for example, a female prisoner cannot sustain an equal protection claim on the basis that male prisoners at a different

facility were similarly situated. *Women Prisoners v. Dist. of Columbia*, 93 F.3d 910, 925-26 (D.C. Cir. 1996).

In support of the equal protection claim, the Complaint alleges that the BOP "regularly administers to the religious needs and interests of its black prisoners by showing Nation of Islam and Louis Farrakhan videos, as well as other black religious programming." Like Creativity, the Nation of Islam and Louis Farrakhan "espouse black pride and black separatism," but while the BOP broadcasts black separatism programs, Defendants will not allow Mr. Hale to correspond with others regarding white pride and white separatism. Though Mr. Hale is not permitted to have a copy of Nature's Eternal Religion, the BOP freely distributes the Christian Bible and the Muslim Koran. Further, "if [Mr.] Hale were a Christian, Muslim, or Jew, the [D]efendants would leave him alone and let him exercise his religious and ideological speech, exercise, and association rights without interference or punishment." Lastly, Mr. Hale alleges that the Defendants do not like that "[Mr.] Hale writes articles and sermons for his faith and church … however, other similarly-situated prisoners . . . engage in same or similar conduct without penalty."

Liberally construing the Complaint, it appears to raise equal protection claims based on (1) the mail bans and (2) the refusal to allow him a copy of Nature's Eternal Religion. To the extent that the Complaint raises an equal protection claim based on the mail ban, it has not alleged sufficient facts to support this claim because it does not identify any similarly-situated prisoners who, unlike Mr. Hale, have been allowed to promote their religious beliefs or corresponded with religious followers via the mail. Indeed, it alleges only that other prisoners are permitted to watch religious program. This allegation is insufficient to plead the similarities necessary to proceed with an equal protection claim.

For the same reason, the equal protection claim based on the Defendants' refusal to allow Mr. Hale to retain a copy of Nature's Eternal Religion fails. The Complaint has not alleged that similarly-situated persons, not of the protected class (individuals adhering to Creativity) were allowed a copy of Nature's Eternal Religion. That other individuals, including Mr. Hale, are permitted other religious texts has no bearing. Accordingly, the equal protection claims are dismissed in their entirety.

### F. Eighth Amendment Claim

Defendants lastly move to dismiss Mr. Hale's claim that the restrictions imposed by Defendants, coupled with his confinement in solitary, result in cruel and unusual punishment in violation of the Eighth Amendment.

The Eighth Amendment prohibits only punishment that is "cruel and unusual"; and, as relevant, though it reaches beyond "barbarous physical punishments," to constitute cruel and unusual, the punishment must be "unnecessary and wanton." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1980). When an incarcerated plaintiff challenges the conditions of confinement under the Eighth Amendment, the plaintiff must sufficiently allege deliberate indifference (the subjective test) to a substantial risk of serious harm (the objective test). *See Perkins v. Kansas Dep't of Corrs.*, 165 F.3d 803, 807 (10th Cir. 1999); *see also Tennant v. Miller*, 589 Fed. App'x 884, 885-86 (10th Cir. 2014); *Hill v. Pugh*, 75 Fed. App'x 715, 721 (10th Cir. 2003) (mere "lack of companionship" does not constitute cruel and unusual punishment). Particularly, a plaintiff must allege deprivation of a basic human need, such as "food, warmth or exercise." *See Wilson v. Seiter*, 501 U.S. 294, 304-05 (1991). Conditions that are merely "harsh" or "restrictive" are merely "part of the penalty that criminal offenders pay for their offenses against society." *Rhodes*, 452 U.S. at 347. An Eighth Amendment claim based on lack of social interaction must

allege total deprivation. *See Silverstein v. Fed. Bureau of Prisons*, 559 Fed. App'x 739, 756

(10th Cir. 2014) (where an inmate "maintains a degree of social contact" no Eighth Amendment

violation occurred); *see also Hugh*, 75 Fed. App'x at 721 (confinement in solitary for twenty-

three hours a day does not rise to the level of "intolerable or shocking conditions" necessary to

amount to an Eighth Amendment violation).

The Complaint alleges that Mr. Hale is "confined to his cell twenty-two hours a day,"

"has only been able to receive two social visits" since 2005,[16] and, because he "has been kept in

solitary confinement for over ten years," the Defendants "have an obligation to refrain from

imposing additional onerous conditions upon his confinement that would cumulatively render his

imprisonment cruel and unusual," like taking away his mail. But the Complaint acknowledges

that Mr. Hale was allowed to communicate with his family, and there are no allegations that he

was deprived of all human interaction. Thus, taking these allegations as true, they are insufficient

to allege an Eighth Amendment violation.

Mr. Hale's Eighth Amendment claims are therefore dismissed.

## VI. CONCLUSION

For the forgoing reasons, the Court **ADOPTS IN PART** the Recommendation **(#58)**.

The Defendants' Motion to Dismiss **(#41)** is **GRANTED IN PART AND DENIED IN PART**.

The Motion is **DENIED only** with respect to the following claims: (1) the First Amendment

claim that the mail bans and the refusal to provide a special diet violate the right to free exercise

of religion; (2) the First Amendment claim that denial of a copy of Nature's Eternal Religion was

a violation of the right to free speech; (3) the First Amendment claim for retaliation as related to

the mail bans; and (4) the claims under the Religious Freedom Restoration Act (RFRA) as

---

[16] The Complaint attributes the lack of visits at least in part to no fault of the Defendants —
namely, that Mr. Hale has no "ties to the state of Colorado."

related to the mail bans and the refusal to provide a special diet. These claims may proceed only to the extent they seek injunctive relief against the Bureau of Prisons. The Motion is **GRANTED** in all other respects, as specified herein, and all claims against the individual Defendants are dismissed. The caption shall be amended to omit reference to the individual Defendants.

Dated this 30th day of September, 2015.

BY THE COURT:

Marcia S. Krieger
Chief United States District Judge